STATE OF NEBRASKA EX REL. JAMES L. WEASMER,
COMMISSIONER OF LABOR, APPELLANT, V. MANPOWER
OF OMAHA, INC., APPELLEE.

73 N. W. 2d 692

Filed December 9, 1955.   No. 33814.

*Clarence S. Beck,* Attorney General, and *Richard H. Williams,* for appellant.

*Edmund R. Sturek,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This is an action in equity instituted by the State of Nebraska on relation of James L. Weasmer, Commissioner of Labor, relator and appellant, against Manpower of Omaha, Inc., a corporation, respondent and appellee, the purpose of which was to enjoin the respondent from operating an employment agency without compliance with the statutes requiring employment agencies to obtain a license to operate such an agency.

The action was tried to the court at the conclusion of which a decree was rendered in favor of the respondent and against the relator in which decree it was found that the respondent was not an employment agency

within the purview of the Nebraska statutes. From this decree the relator has appealed. The only substantial question raised by the assignments of error is that of whether or not the respondent is an employment agency within the meaning of the statutes and the facts as they appeared on the trial.

Section 48-501, R. R. S. 1943, defines employment agency. The section in this respect, to the extent necessary to quote it here, is as follows: "The term 'employment agency,' means and includes the business of conducting, as owner, agent, manager, contractor, subcontractor or in any other capacity, an intelligence office, domestic and commercial employment agency, theatrical employment agency, bonding and reference bureau, shipping agency, teachers' employment agency, general employment bureau or any other agency or office for the purpose of procuring or attempting to procure help or employment or engagements, or for the registration of persons seeking such help, employment or engagement, or for giving information as to where and of whom such help, employment or engagement may be procured, where a fee or other valuable consideration is exacted, or attempted to be collected, directly or indirectly, for such services, whether such business is conducted in a building or on the street or elsewhere."

The section defines fee as follows: "The term 'fee' means and includes any money or other valuable consideration paid or promised to be paid for services rendered or to be rendered by any person conducting an employment agency of any kind under the provisions of said sections. Such term includes any excess of money received by any such person, over what has been paid out by him for the transportation, transfer of baggage or board and lodging for any applicant for employment. Such term also includes the difference between the amount of money received by any such person who furnishes employees and the amount paid by him to such employee."

Section 48-502, R. R. S. 1943, provides: "Any person, firm or corporation who for hire or with a view to profit shall undertake to secure employment or help or through the medium of cards, circulars, pamphlets of any nature whatsoever, or through the display of a sign or bulletin offer to secure employment or help or give information as to where employment or help shall be secured, shall be deemed a private employment agency and shall be subject to the provisions of sections 48-501 to 48-514."

It is obvious from a reading of these sections that section 48-502, R. R. S. 1943, is cumulative of section 48-501, R. R. S. 1943, in that it includes within the definition of employment agency the procurement of help for an employer as distinguished from procurement of employment for an employee. It also subjects employment agencies to all of the provisions of article 5, chapter 48, of the Nebraska statutes.

Section 48-503, R. R. S. 1943, provides: "No person, firm or corporation in this state shall open, operate or maintain a private employment agency for hire or for help without first obtaining a license for the same from the Commissioner of Labor, * * *."

Coupled with allegations of fact which are not in dispute the petition of the relator alleges the following facts upon which it relies to have the respondent declared an employment agency and to have it enjoined from operating as such without the procurement of a license required by section 48-503, R. R. S. 1943:

"3. That the respondent, Manpower of Omaha, Inc., is * * * engaged in the maintenance and operation of an employment agency * * * without * * * first procuring or taking out therefor * * * a license as required by said laws.

"4. That respondent's business office is open to the public and the public is invited to avail themselves of the services offered by the respondent; that respondent interviews and lists in its files, without charge for regis-

tration, persons who come to it seeking part-time or temporary work; that other business organizations or persons interested in procuring such help notify respondent of their needs and respondent selects from its files a person deemed qualified to fulfill the request and dispatches him or her to the requesting organization or other person; that the requesting organization reports the actual hours that the worker dispatched has labored and respondent then bills the requesting organization at an hourly rate which is determined in advance according to the type of work requested or performed; that the hourly amount billed the requesting organization is greater than the hourly amount which is then paid to the person dispatched; that respondent keeps all records on the persons it dispatches, withholds social security and withholding taxes, maintains workmen's compensation insurance, liability insurance and fidelity bonds."

To the extent necessary to set forth its contents here the answer denies that the respondent has ever engaged in the maintenance or operation of an employment agency or that it has violated any valid, constitutional, or enforceable statute of the State of Nebraska. And further the answer contains a general denial.

No theory of unconstitutionality of the statutory provisions in question is urged here hence that phase of the answer may be disregarded.

Also no theory of invalidity of statute on other grounds is presented. The respondent asserted in its brief that the provisions to which the petition relates are penal in character and must be strictly construed, and that being thus construed it must be said that the respondent was guilty of no violation of the statutes.

As contended by respondent penal statutes are inelastic and must be strictly construed, and may not be extended by implication. See, Macomber v. State, 137 Neb. 882, 291 N. W. 674; State v. Chicago & N. W. Ry. Co., 147 Neb. 970, 25 N. W. 2d 824.

It however can have no controlling significance in a situation such as is presented here where under the terms of the pleading the effort is to declare the statute invalid but in truth the effort is to seek to have an adjudication that the respondent is not amenable to a valid act.

The purpose in pointing this out here is not to say that this rule may not have application to appropriate issues in a case but to make clear upon what issue this case was actually submitted by the pleadings to the district court and on which it comes to this court.

In actuality the case was presented to the district court upon the issue tendered by the relator in its petition, the significant part of which is quoted herein, and the general denial of the respondent.

Evidence was adduced by the parties and thereafter on that evidence and the law the district court, as already indicated, adjudicated the issue in favor of the respondent. In particular the adjudication was a dismissal of the petition.

The case therefore comes here for review on the record made in the district court and authentically and authoritatively brought to this court.

Having examined the allegations of fact in the petition filed in the district court and the statutes in question it is our opinion that on strict construction of the statutes or otherwise, if the allegations of the petition were sustained by evidence sufficient in degree to support a decree, that the decree of the district court was erroneous.

It appears that the acts charged against the respondent were violative of the clear, specific, and unambiguous language of both sections 48-501 and 48-502, R. R. S. 1943. To demonstrate this it becomes necessary only to repeat by abstraction from section 48-501, R. R. S. 1943, language which accurately describes the charge against the respondent as follows: "The term 'employment agency,' means and includes the business of con-

ducting * * * any * * * agency * * * for the purpose of procuring * * * help or employment or engagements, or for the registration of persons seeking such help * * * where a fee or other valuable consideration is exacted, or attempted to be collected, directly or indirectly, for such services * * *. Such term (fee) also includes the difference between the amount of money received by any such person who furnishes employees and the amount paid by him to such employee."

Obviously this language covers the activities described in the petition. Even if there could be any doubt about this in the language preceding the last sentence, none could remain after reading this sentence. It points to the kind of acts described. If there could still be any doubt about this it is dispelled by section 48-502, R. R. S. 1943. This section aptly describes the functions the respondent was engaged in as declared by the petition. The petition declares that the respondent was a corporation which undertook for hire or with a view to profit to secure for others employment or help. This activity the section describes as a private employment agency.

It appears that injunction is a proper remedy for the correction of conditions such as were complained of by the relator in the petition. In State v. Chicago & N. W. Ry. Co., *supra*, it was said: "Injunction is properly used for the protection of public rights, property, or welfare, whether or not such acts violate a penalty statute and whether or not they constitute a nuisance." See, also, State v. Pacific Express Co., 80 Neb. 823, 115 N. W. 619, 18 L. R. A. N. S. 664; State ex rel. Sorensen v. Ak-Sar-Ben Exposition Co., 118 Neb. 851, 226 N. W. 705, 121 Neb. 248, 236 N. W. 736.

In determining whether or not the pleaded cause of action has been sustained reference of course must be had to the evidence adduced at the trial and coming to this court in an authentic bill of exceptions.

This court has said: "Where, on appeal in equity

from a judgment of the district court, the record contains no bill of exceptions and the pleadings are sufficient to support the judgment it will be affirmed." Bednar v. Bednar, 146 Neb. 726, 21 N. W. 2d 438. See, also, Palmer v. Capitol Life Ins. Co., 157 Neb. 760, 61 N. W. 2d 396.

This court has also said: "Where the record contains no authentic bill of exceptions or the bill of exceptions has been quashed, no question will be considered, the determination of which necessarily involves an examination of the evidence adduced in the trial court, and in such a situation, if the pleadings are sufficient to support the judgment, it will be affirmed." Dryden & Jensen v. Mach, 150 Neb. 629, 35 N. W. 2d 497. See, also, Adkisson v. Gamble, 143 Neb. 417, 9 N. W. 2d 711; Ratay v. Wylie, 147 Neb. 201, 22 N. W. 2d 622; Benson v. General Implement Corp., 151 Neb. 234, 37 N. W. 2d 223; Horn v. Gooch Feed Mill Co., 157 Neb. 125, 58 N. W. 2d 626.

After this case was appealed and the purported bill of exceptions was settled by the trial judge the respondent filed a motion to quash it on the ground that it was not prepared and presented in such manner as to give it validity under statutory requirements. The motion is in terms to strike and expunge the bill from the files and records of the appeal.

This motion has been presented but not ruled upon. It therefore must be disposed of before the determination is made upon the issues tried in the district court.

By statute (section 25-1140.01, R. R. S. 1943) a party appealing may request that all of the evidence shall be contained in a bill of exceptions. The concern here however is not with this provision. In the alternative he may request that the bill of exceptions include less than all of the evidence. If he requests less than all he is required within 3 days after filing notice of appeal to serve notice upon the adverse party or his attorney of record and file with the clerk of the district court (1) a

designation of the witnesses whose testimony he deems essential, (2) a designation of the exhibits and such trial proceedings as he desires to have included, and (3) a statement of the errors he intends to rely upon for reversal or modification of the judgment or final order from which the appeal is taken.

The basis of the motion to quash is that the statutory notice was not served upon the respondent or its attorney of record.

The filing of a motion to quash a bill of exceptions in this court is proper procedure whereby to present the question of whether or not there has been compliance with the requirements necessary to obtain and settle a bill of exceptions. Greenwood v. Craig, 27 Neb. 669, 43 N. W. 427; Phoenix Ins. Co. v. Readinger, 28 Neb. 587, 44 N. W. 864; Scotts Bluff County v. McHenry, 128 Neb. 613, 259 N. W. 754. In Scotts Bluff County v. McHenry, *supra,* this question was not directly considered but the motion to quash was disposed of on its merits.

With regard to the question of whether or not the notice of request for partial bill of exceptions was served within 3 days the transcript contains the following: Notice of appeal was filed March 11, 1955. On March 18, 1955, the attorney representing the relator filed his affidavit in which he stated that he served his request for a partial bill of exceptions upon the attorney for respondent by placing a true copy of it in the United States mail in registered form on March 12, 1955. A partial bill of exceptions was prepared and submitted to the attorney for respondent on May 19, 1955. It was returned on May 26, 1955. The respondent substantially objected to it on the ground that it was a partial instead of a complete bill of exceptions. The bill was settled by the trial judge as a partial bill of exceptions on June 3, 1955. On October 27, 1955, the respondent filed its motion to quash.

The motion to quash was in substance and to the ex-

tent pertinent here based on the grounds that the bill of exceptions is not complete and thus could not afford respondent a fair and just opportunity to present its case to the Supreme Court, and that notice of the intention to procure a partial bill of exceptions was never served upon respondent or its attorney.

This motion is supported by the affidavit of the attorney for the respondent. In addition it is stated in the affidavit that the first notice the respondent or its attorney had of the request for a partial bill of exceptions was on or about May 18, 1955, the time when the bill was served.

It is observable that while the statute provides that notice shall be served it contains no provision as to manner or method of service beyond the requirement that it shall be served "upon the adverse party or his attorney of record." As is made apparent by the affidavit of the attorney for the relator the method employed in this instance was by registered mail.

No objection has been made that service was made by mail. The objection is that there was no service of the notice. Strictly speaking then we are called upon to determine whether or not there has been service. In turn this determination must depend upon the question of whether or not there is satisfactory and sufficient proof of service.

The decisions of some of the jurisdictions adhere to the rule that where service of notice is required and no method of service is prescribed the service must be made personally. Calkin v. Roberts Park Fire Protection Dist., 398 Ill. 374, 76 N. E. 2d 43; James v. Hutchinson (Mo. App.), 211 S. W. 2d 507; State v. Stokes, 55 Idaho 51, 37 P. 2d 404; Lock Joint Tube Co. v. Citizens Trust & Sav. Bank, 218 Ind. 162, 31 N. E. 2d 989.

In other jurisdictions it has been held that under such circumstances the only necessity is that the party to be served shall actually receive the notice and that the method is unimportant. Brost v. Whitall-Tatum Co.,

89 N. J. Law 531, 99 A. 315, L. R. A. 1917D 71; Smirl v. Globe Laboratories, Inc., 144 Tex. 41, 188 S. W. 2d 676; North v. Kinney, 231 Iowa 951, 2 N. W. 2d 407; Bailey Lumber Co. v. General Construction Co., 101 W. Va. 567, 133 S. E. 135.

A condition of both rules however is that the party making the service must be in a position to make due proof that service was actually had upon the party required to be served.

Assuming but not deciding that service of notice may be made under this statute by registered mail, in the absence of evidence to the contrary, it is to be presumed that the notice was received by the attorney for the respondent. See 31 C. J. S., Evidence, § 136a, p. 777. This is a rule which is generally accepted.

The presumption however is only prima facie and may be rebutted. And in case of denial of receipt of notice the question of delivery becomes one of fact with the burden upon the sender to prove receipt by the addressee. Bloch v. Eastern Machine Screw Corp., 281 F. 777; Huntley v. Whittier, 105 Mass. 391, 7 Am. R. 536; National Union Fire Ins. Co. v. Owens, 14 Tenn. App. 556; National Aid Life Assn. v. Driskill (Tex. Civ. App.), 138 S. W. 2d 238; 31 C. J. S., Evidence, § 136e, p. 785.

Since we are not called upon to do so we do not decide upon the method whereby service of notice is to be made in instances wherein a statute requires notice but fails to provide the method. What we do decide is that in the light of the record presented the relator has failed under the rules to sustain the burden of showing that the required statutory notice was served upon the respondent.

It has been suggested that the right to complain was waived by failure to raise the question earlier. This contention is untenable. The question was raised at the earliest opportunity and has been urged at all times since. This opportunity came after the respondent was

deprived of a substantial right granted by this same section of the statute. The respondent was entitled within 7 days to request additions beyond the request of the relator. Clearly by implication if no request for additions was made within 7 days such additions were barred.

There have been a number of decisions of this court wherein it has been held for different reasons that the right to have a bill of exceptions quashed has been waived but our attention has not come to any the effect of which is to say that where a substantial right would be abridged the doctrine of waiver may be applied. In a case, not in point in fact, we think the rule which should obtain in this case is found, as follows: "The appearance of defendant in error was solely to insist on the objection to the allowance, and one does not ordinarily waive a right by insisting on it." Supreme Tent of the Knights of the Maccabees v. Kreig, 54 Neb. 588, 74 N. W. 1104.

The conclusion therefore is that the motion to quash the bill of exceptions should be sustained.

In the light of the determination upon the motion to quash, it becomes necessary to say that the case comes to this court effectually without a bill of exceptions. In consequence of this in the light of what has already been said herein the only inquiry is that of whether or not the pleadings may be said to support the judgment of the district court. From what has been pointed out it is clear that the pleadings support the judgment. The judgment of the district court therefore must be affirmed.

MOTION TO QUASH SUSTAINED. AFFIRMED.